Our last case for argument this morning is United States v. Samuel Caraway. The District Court in this case sentenced Mr. Caraway to 360 months imprisonment on a charge of conspiracy to distribute cocaine and possess with the intent to distribute cocaine. Part of that sentence was based upon a two-level enhancement for obstruction of justice under Section 3C1.1 of the Sentencing Guidelines. The pre-sentence report stated that Mr. Caraway willfully obstructed or impeded the administration of justice when he ceased contact with the government and its agents following his May 2017 interview and then successfully evaded arrest for approximately 42 months following his indictment. Mr. Caraway objected to that statement in that paragraph in the pre-sentence report. The District Court agreed with the pre-sentence report and overruled Mr. Caraway's objection, stating that this sort of conduct, according to the District Court, fell in the category of calculated evasion and not panicked or instinctive flight. The Court further said he successfully evaded law enforcement. So that is what the appeal is about, that two-level enhancement for obstruction of justice. Mr. Caraway's position here, as stated in my brief, is that the government failed to show any deliberate act or conduct on the part of Mr. Caraway that was indicative of willful or calculated evasion. There was no deliberate act. There was no conduct. So is it your contention that one needs to physically flee in order to evade arrest? In other words, hiding in a city of two million can't be evasion? Well, Your Honor, I would say that the cases certainly all indicate or they show flight because that was the particular conduct in those cases. Simply being in a city and not being found, I don't believe is actual evidence of evasion. I do believe there's a difference between being found or not being found. But if we're going to say that there was some deliberate act or his evasion was calculated, there would need to be more than just simply the fact that they didn't find him. I don't believe there's an obligation to turn oneself in. I'm not saying that that was the case here, but I think the Enjurebe, or I'm pronouncing the name wrong, Enjurebe, states that there's a difference between not making it easier for the police to arrest you and making it much harder. One of the cases that we both cite, the government and Mr. Caraway, is that Porter case. And I think Porter starts out just like Mr. Caraway's case. There's a meeting with law enforcement. There's some admissions of conduct. There's an attorney who's alleged to have been involved. There's information that an indictment is pending or coming soon. But where we draw a distinction between Porter is that in Porter, that defendant changed his identity, had fake documents, birth certificate, Social Security card. He moved to another state. He moved from Indianapolis to Tennessee. He was found with a book on how to change your identity. And the court found those actions were deliberate. Those actions were calculated and deliberate. But we don't have that here. They talk about at the time of his flight. So, Your Honor, my contention isn't necessarily that there has to be flight, but that's what we see in these cases. My contention, rather, would be that they still have to show something that he did. What was his conduct here that was evasive? Simply not being found or this delay in time, I don't believe, rises to the level of obstruction. Now, one other point that I wanted to make was that the government, with respect to his actual and ultimate arrest down in Texas in July of 2021, at that time, it's alleged that Mr. Caraway gives two false names to police when he's being arrested. And I believe that is more indicative of this panic or instinctive conduct that the Draves case talks about. Draves talks about the guy who's in handcuffs in a U.S. Postal Service car. He's in handcuffs. They go to arrest somebody else, and he runs out the door, and they catch him three houses down. And the court refers to it, actually, as pathetic. And they refer to it as not some calculated act, some instinctive act, some, again, pathetic, panicked act. And that's what happened, I believe, here. He gives two names that are false to law enforcement. That is not going to work. I mean, it took this trooper a matter of minutes to get him to admit that that wasn't his name. And this all happened on the side of the road. And I believe the phrase that they talk about is, when one suddenly finds himself in the power of the police, they do things like that. And that is not obstructive, calculated conduct, but more instinctive or panicked conduct. Now, Mr. Caraway knew during his proffer interview that he was about to be indicted, right? My understanding is he was told that, yes, Your Honor. What obligation do you think that would impose on him or anyone in his position? With respect to remaining in communication with law enforcement in the government or just remaining in communication with anyone? I'm not sure I know which one, Your Honor. Well, I mean, even if we assume that his lawyer had never passed along the message, does it really matter? Because he knew that it was coming. And I'm just wondering, you know. Knowing that it's coming, Your Honor, I think is different than doing something to avoid it. And I don't know that we have that affirmative deliberate act to necessarily avoid that. Being told you're going to be, and let's not forget, he was indicted two years after the other defendants in this case. So, I mean, they were all indicted. He proffered in similar time, but they don't indict him for two years after the others. So saying that an indictment is coming, I'm not sure what his obligation is then to, he doesn't have one to turn himself in. Again, I think not making it easier to get caught is different than making it harder, and I just don't see that here. And I believe I had asked for maybe three minutes in rebuttal, and I think the clock shows that, so I will stop there. That's fine. Thank you, Your Honor. Mr. Dean. May it please the court, David Dean on behalf of the United States, the appellee in this matter. I'd like to actually begin my comments by addressing an issue that Mr. Smith did not reach, that being the harmless error issue that is at issue here. While the government is very confident that the district court did not clearly err in finding that Mr. Carraway obstructed justice by evading arrest, that's actually not a question that this court even needs to reach, because the district court made very clear in imposing sentence that its choice of sentence, 360 months, would have been the same even if the obstruction issue had come out the other way. That means that remand, the relief that Mr. Carraway seeks, would be a pointless exercise in this case, and it means that any procedural error that the district court may have made in calculating the guidelines was harmless. Mr. Dean. Yes. I'm looking at what the district court said. He said, this would be my sentence even if my rulings on the objections were wrong and the guideline range would be something else. Is that enough? I mean, because if he had, if we find he did err on the guideline calculations, then the 360 months would be, would far exceed the guidelines that would apply in that case. And don't we expect district courts to do a little bit more? Explain why they want, they are going to impose sentence that is greater or substantially greater than the guidelines, other than just a flat-out statement, oh, I would have done it anyway? Yes, Your Honor, and this court just last year in the Asbury case reiterated that there are no magic words that the district court can invoke like a mantra and thus inoculate a sentence. That said, that's really not what the court did here. In Asbury, this court stated that the requirements to effectively inoculate a sentence from any finding of reversible guidelines error are twofold. First, the district court must give specific attention to the contested guideline issue. And second, the district court must explain the parallel result, meaning that it must adequately account for why, if there was an error, it wouldn't result in a different sentence. Now, the first of those two requirements, I believe Mr. Caraway has actually conceded in this case. On page five of his reply brief, Mr. Caraway wrote that it concedes that the district court gave attention to the contested guideline issue. So I won't belabor that point any further. But as to the second requirement, I believe that's also satisfied in this case. And the sufficiency of the district court's explanation of its parallel result, I believe, can be seen in this case in at least three ways. First, the district court calculated the guideline range that would result even if the obstruction issue had come out the other way. I think that's very important because it enables this court on review to see and know that when the district court said, even if the guidelines came out differently, I would impose the same sentence, it wasn't just flying blind. It knew exactly what that meant and nevertheless persisted in saying 360 months would be my sentence. Secondly, the district court very clearly rooted its sentence in its application and analysis of the 3553A factors. Its analysis of those points was detailed and the government has addressed in its brief. I don't want to belabor it here except to highlight one aspect that I think is especially pertinent. And that's where the district court said in assessing the relevant conduct in this case, it said that the drug quantity and the corresponding value of the drugs was the most that this judge had ever seen in her eight years on the bench. Then the district court said that Mr. Carraway himself personally was, quote, by far the most culpable of all the co-defendants and co-conspirators in this case. Then when imposing sentence, the court said 360 months is the largest sentence I've ever imposed in a drug case and I've only done that one or two times previously. But, and again I'm quoting, given the extensive nature of this drug trafficking organization, that is certainly appropriate. So I think you can draw a pretty straight line through those comments that says the district court was pretty clearly assessing Mr. Carraway's culpability both relative not only to his own co-defendants but also to all other drug defendants the court had ever encountered and concluded that a sentence of 360 months, the highest sentence the court had ever imposed, was appropriate in this case. In other words, the court said this is the largest drug case I've ever had. Mr. Carraway is the most culpable defendant in this case and therefore a sentence of 360 months is appropriate and that's completely irrespective and not relying on the guideline range, Your Honor. The final point I would say in terms of the adequacy of its explanation for the parallel result is the statement that anything less than 360 months would be insufficient to achieve the goals of sentencing. I simply don't know how the district court can any more clearly say that its ultimate choice of sentence was not tethered to a specific guideline range. And in fact, Your Honors, I would direct the court to the Alvarez-Carvajal case decided just two years ago in which a virtually identical statement by this exact judge was deemed sufficient to find harmless error under very similar circumstances. Now, if we suppose that Mr. Carraway's lawyer never gave him the message about the indictment, the surrender date, is it your position, is it the government's position, that he had a duty to walk into a police station and surrender himself because he did have the knowledge that he was going to be indicted soon? And on what date do you think that obligation accrued? Your Honor, I don't believe it's a question of obligation. And I think the Nduribe case suggests that there is no obligation for a defendant who knows that indictment is coming to surrender himself. But I think the relevance of Mr. Carraway's knowledge, which as Mr. Smith just conceded, at least as of May 2017, Mr. Carraway, at the proper session, Mr. Carraway knew an indictment was imminent. And so turning to the merits, Your Honor, I think that in the government's view, this is clearly a case where the standard of review is this positive. This court said in the Cisneros case that a district court's obstruction finding is reviewed only for clear error with deference giving to the court's application of the guidelines to the facts. So clear error is the standard. And this court elsewhere has repeatedly said that a clear error is an extremely deferential standard review, which will—all the court—all that has to be shown is plausibility of all of the evidence. And if you look at the totality of the evidence, Your Honor, I think the district court's account and their thus conclusion that Mr. Carraway was calculatedly evading arrest is certainly a plausible interpretation of the evidence. Here's what we see. Mr. Carraway knew—he certainly knew that an indictment was coming, and then he abruptly cuts off all communication not just with the government, but also with his own attorney, even with his own family members. Then he disappears. He's not found in locations where the government knew he previously had been. He cuts off all communication with his family members. And then, maybe most importantly, he refrains from any traceable commercial activity. These are—Mr. Smith has suggested there's no evidence. I think what really this case is about is the distinction between direct evidence and circumstantial evidence. We don't have direct evidence because we don't—as the district court concluded, he was evading arrest effectively. What we do see is when the law enforcement finally catches up with him on the Texas roadside, he repeatedly lies about who he is, and then when confronted with those lies, he actually admits that the reason he was doing so is because he knew he was wanted. All of those things, I think, certainly mean that the district court's conclusion that he was actively evading arrest was at least plausible. And I would just— I think—forgive me. Does the record tell us—do we know if the warrant in this case was his only outstanding warrant? No. I do know he had at least one other active warrant for a Texas matter. So I would just emphasize that this court need not find that the district court's interpretation of the evidence was the only plausible interpretation or even that it was the most plausible interpretation of the evidence. It's sufficient to find that it was plausible, and obviously that is a very difficult standard for Mr. Carraway to prevail under. In fact, I would just note that at least as far as the government is aware, in the 25 years since Draves, when this court first recognized that there could be evasion, obstruction of justice based on evasion or flight, this court has never, to the government's knowledge, never reversed a district court's finding of obstruction based on flight or evasion under the clearly erroneous standard. And this certainly shouldn't be the first case to do so. For all those reasons, the government asks that the judgment and sentence of the district court be affirmed. Thank you. Thank you. Mr. Smith. Thank you, Your Honor. I wanted to address the question from Judge Lee to Mr. Dean regarding do we expect more of the district court. I do agree that Judge Rosenstangel did cover the objection. She covered that, and I believe the record is clear. But that second prong of that test that's in Asbury, it says, did she adequately discuss or explain the parallel result? Well, if that objection had been sustained, the defense level would have dropped from 38 to 36, which would have resulted in a guideline range of 235 to 293 months. And Judge Rosenstangel said, simply stating that that guideline range wouldn't meet the sentencing goals, but she didn't go any further. She didn't talk about why 235 to 293 months would not be sufficient to satisfy those purposes of punishment under 183553A. So I don't believe that it was adequately explained, that parallel result of the lesser sentence. So, therefore, I don't believe it's harmless error. Judge Rovner, with respect to another warrant, Mr. Carraway did have a warrant out of the state of Texas at the time of the roadside stop. And when he did say, I have warrants, there was no distinction between whether this warrant in this particular federal case or the state case out of the state of Texas. And then with respect to the plausible interpretation, I appreciate the government's stance on, well, this could be plausible. But again, I still have not seen something, some affirmative deliberate act on behalf of Mr. Carraway that would suggest he was evading arrest. It's not there. The case law that we have always points to something, whether that's flight, whether it's leaving the country, whether it's moving to another state, whether it's changing your identity, false documents. We don't have any of that. What we have is U.S. Marshals didn't find him. They say they looked. This avoiding traceable commercial activity, that cannot be enough to say that he obstructed justice. So I know I'm repeating myself a bit, but I'm just responding to the government's contentions. But I would ask that the case be remanded. I don't believe there was obstruction here. And with that, I will yield the rest of my time. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement. And that concludes our calendar for today. The court is in recess.